## Louden *versus* Blythe.

1. The certificate of a justice of the peace in relation to the acknowledgment of a mortgage by a *feme covert* is not conclusive, but parol evidence is admissible to show that the acknowledgment by the wife was not done of her free will and accord, but that undue means were used for obtaining it; and if the mortgagee has a knowledge of facts calculated to put him on inquiry as to the manner in which the acknowledgment was obtained, he must abide the consequences.

2. If interrogatories are substantially answered in the course of the deposition, it is sufficient.

3. The declarations of the wife objecting to making the acknowledgment, made immediately before and at the time of the acknowledgment, though during a period of several hours, are admissible as part of the *res gestæ.*

ERROR to the Common Pleas of *Adams county.*

This was an action of ejectment by Samuel Louden *vs.* Sarah Amanda Blythe and George W. Heagy.

Ezra Blythe and John McCleary, of the town of Fairfield, in the county of Adams, in the year 1843 were partners in trade, doing business under the name and style of Blythe & McCleary. In February 1843, the firm became somewhat embarrassed, and several suits were instituted against it by creditors. On the 27th day of February 1843, to relieve them in their difficulties, at their request, Samuel Louden, the plaintiff in this case, was induced to contribute of his means for that purpose, and as security to him for engagements then entered into by him, three different mortgages were executed in his favor: one by John McCleary, of his individual property in Fairfield—one by Ezra Blythe and two of his brothers, of their undivided interest in a certain tract of land; and one by Ezra Blythe and Sarah Amanda Blythe his wife, for two lots of ground in Fairfield—the said two lots being held in fee by said Sarah Amanda when she married Ezra Blythe.

Samuel Louden complied, on his part, with all the conditions and stipulations embraced in the mortgages referred to.

Ezra Blythe died in August 1844.

Upon the mortgages executed by John McCleary, and by Ezra Blythe and his brothers, nothing was realized.

Samuel Louden brought this action of ejectment, No. 3, April term 1850, upon the mortgage executed by the said Ezra Blythe and Sarah Amanda his wife, against Sarah Amanda Blythe and George W. Heagy, to recover possession of the mortgaged premises.

Mrs. Blythe, one of the defendants, made defence on the ground that her signature to the mortgage had been obtained against her will, and that upon her separate examination she had not declared to the justice of the peace, before whom the acknowledgment was

made, that she had sealed and delivered said mortgage voluntarily, and of her own free will and accord.

On the 23d day of April 1851, the cause was tried before Judge DURKEE.

The plaintiff first gave in evidence the mortgage by Ezra Blythe and wife, bearing date the 27th February 1843. Witness, Nath'l Grayson.

A certificate as follows was upon it:—

Adams County, *ss.*

Be it remembered, that on the twenty-seventh day of February, eighteen hundred and forty-three, personally appeared before me, a justice of the peace in and for the county aforesaid, Ezra Blythe and Sarah Amanda his wife, parties to the above indenture, and acknowledged the same to be their act and deed, to the intent that as such it might be recorded according to law. She, the said Sarah Amanda, being of full age, and being by me examined separate and apart from her said husband, and the full contents of said indenture having been by me first made known to her, she did declare that she did voluntarily, of her own free will and accord, without any coercion or compulsion of her said husband, sign, seal, and deliver the above and foregoing indenture as and for her act and deed. In testimony whereof, I have hereunto set my hand and seal the day and year aforesaid.

NATH'L GRAYSON. [SEAL.]
Recorded 8th August 1843.

The plaintiff then proved loans by him, his engagements as surety for Blythe & McCleary, and payments made in pursuance of the conditions of the above mortgage, amounting to about $4400, exclusive of interest.

Admitted that defendant is in possession, and was, at the institution of this suit.

On part of *defendants*, the other two mortgages to plaintiff were given in evidence, viz., the mortgage, John McCleary to Samuel Louden, dated 27th February 1843. Recorded 8th August 1843, before referred to.

Mortgage, Ezra Blythe and brothers to Samuel Louden, date 27th February 1843. Recorded 8th August 1843; also before referred to.

It was admitted that the *property in dispute* was held in fee by Sarah A. Blythe, defendant, when she intermarried with Ezra Blythe, and when the mortgage was executed.

On part of defendants it was offered to prove substantially as stated in the testimony of Mrs. M. Blythe. The offer contained the following:—During the whole time, the defendant was in great distress, much agitated, and frequently shed tears. These circumstances took place in the evening by candle-light. The

[Louden *v.* Blythe.]

plaintiff, Samuel Louden, was present in the sitting-room, with Ezra Blythe and others, where the papers were prepared, at the time the defendant was first requested to execute the mortgage, and refused to do so; but was not present at the time the justice came into defendant's room to take her acknowledgment.

Objection was made on part of plaintiff, but the testimony was admitted. The conclusion of the decision of Judge DURKEE, as to admitting the testimony, was as follows:—In answer to the argument that the plaintiff, not having participated in the fraud, if one was committed, cannot be affected by it, I would say, that I think it was incumbent on him to see that the proper acknowledgment was in fact made by defendant, as her signature, without such acknowledgment, would amount to nothing. In regard to the evidence of what occurred at the time she signed the mortgage, what she said and did, &c, I am inclined to admit it as a part of the *res gesta*, as tending, in some degree, to show whether the transaction was consummated by a due acknowledgment of the instrument. As to her subsequent declarations made after the justice left the house, they are not evidence.

Mrs. Blythe testified substantially as follows:—I was present at the house of Ezra Blythe in Fairfield, when a mortgage was executed. Don't recollect exactly when it was. It was written in the parlor by a brother of Ezra Blythe. Uncle David, Uncle Ezra, and Mr. Samuel Louden were present. I was living there at the time. I was in my aunt's bed-room, and Uncle Ezra came in, and asked her to sign the mortgage. He had it not with him. She refused; told him he was aware of her unwillingness to do it; that she had told him before that she would not put her name to it, and that she was determined that she would not. Uncle still insisted, and turned away apparently agitated; replied that if she did not, he would not live on the property with her, and went out; and the brother who wrote the mortgage came in and insisted upon her signing it. I can't tell what he said to her. She told him that she had told him when he was writing the mortgage that it was of no use, for she would not put her name to it. He offered her his glasses, and asked her if the light was sufficient. She again replied, that it was of no use, that she never intended to put her name to it. He insisted on it again and again. She was in bed. She got up and stood by the side of the bureau, and put her name to it. She then took the pen, and gave it a dash as if to strike out her name. I was not close enough to look at the mortgage. He then left the room, and came back in a few moments with Esquire Grayson. Esquire Grayson asked her if she had put her name to the mortgage with her own free will and consent. She said, Mr. Grayson, it is of no use to deceive you; I had no will in the business; my will was not consulted. He then asked her a second question, one of the same meaning, referring to her signing

the deed.  She said she had not done it of her own free will.
Then he asked her if she was afraid of being misused or beaten
by Uncle Ezra, or if she had been misused by him.  She replied,
that uncle had not done that, neither did she fear it; that she had
been pressed into it against her will.  Mr. Grayson and uncle then
went out into the passage, where I heard them whispering, but
could not tell what they said.  There was no writing done after
the justice came into the room.  Esquire Grayson did not write
any thing that I saw.  Aunt was part of the time in the parlor,
and part in the bed-room, when the mortgage was being written.
Cousin Adeline Massey was in the parlor after the mortgage was
written, while the men were yet there.  Don't remember that any
thing was said between my uncle and aunt while in the parlor.
They said something about signing the mortgage; I don't remem-
ber what it was.  My aunt was in tears most of the time.  She
was lying on the bed when Esquire Grayson was there.  She was
in great sorrow, and had been for some days before.  She mani-
fested it by tears. *It was about dusk; a candle was lighted.*  They
were there all the afternoon in the other room, to do the writings.
Her health was not very good.

On cross-examination she said, *inter alia*, that Ezra Blythe died
in August 1844.

On part of *the defendant* was offered a deposition of Mrs. Massey,
taken on commission.

One of the cross-interrogatories, viz. the 8th, filed on the part
of *defendant*, required her to state any thing else she knew that
would be evidence for defendant in the suit.  One commissioner
was named on part of defendant, and two were named on the part
of plaintiff, or either of them.

The commission returned was executed by the commissioner
named on part of defendant.  The Commission was directed to
the three persons named as commissioners, or either of them.

The deposition taken was objected to on the part of the *plaintiff:*
—1st. Because the interrogatories on part of defendant are not
all answered, viz., the 8th, and because no notice was given to the
commissioner named on the part of the plaintiff, and because the
commission was not properly directed.  2d. To the evidence, as
being inadmissible.  Admitted.  Exception by plaintiff.

To the third interrogatory she testified, *inter alia*, that she was
present when Ezra Blythe called upon his wife, the defendant
Sarah A. Blythe, and requested her to execute a mortgage for her
house and lot to the plaintiff, and told her that he would be enabled
to lift it in a very short time.  She replied that she was willing
that all her personal property should be sold to pay all the debts
of the firm, but she was not willing to sign a mortgage for the
house and lot, even for one day, for she felt certain that he would
be disappointed in lifting it at the time expected.  The said Ezra

[Louden *v.* Blythe.]

insisted and urged her to agree to sign the mortgage. She declined peremptorily. He still insisted, and said he would send for Mr. Grayson, the magistrate, to take her acknowledgment. She replied that he need not send for Grayson, that she would not execute the mortgage. But her husband did send for Mr. Grayson, notwithstanding her protestations; and when Mr. Grayson came, the said Sarah appeared greatly distressed, and retired to a private room, and went to bed. The said Ezra, Samuel Louden, a brother of Ezra, and Mr. Grayson, were all in a different room from affiant, and were apparently transacting some business. Witness saw pen, ink, and paper taken in, and after they had been there for some time, Ezra Blythe passed into the room where the said Sarah was in bed, heard him talking to her, appeared to be persuading her, she weeping. He then left the room, and shortly afterwards returned, accompanied by a brother of Ezra and Mr. Grayson, and after some conversation between the parties, all three of the gentlemen left her room, and returned to the room where they had been previously engaged in business. Affiant was in a room immediately adjacent, and within hearing of the bed upon which said Sarah was at the time she executed said mortgage. Mrs. Blythe remained in bed for some time after Mr. Grayson and Mr. Louden had left.

To another interrogatory:

Answer—That she, Sarah A. Blythe, was in delicate health, and appeared greatly excited and distressed at the time referred to.

Fourth interrogatory:

Answer—I have stated all the facts within my knowledge, in the preceding answers, that would be of service to either party.

On the part of the plaintiff, Nathaniel Grayson, Esq., was called. He testified that he was confident of the truth of the facts set forth in the certificate as to the acknowledgment. That he never asked Mrs. Blythe if she had been beaten or abused, or feared she would be. On cross-examination, he testified that Mrs. Blythe was standing when he went into the room; that when he entered she appeared to be distressed; there was nothing said for some time, except an explanation by a brother of Ezra Blythe of the reason of getting up the mortgage; it was addressed to witness; the brother read the mortgage; my recollection of the matter is very imperfect; it is a long time since; I never charge my memory with such matters; I must depend upon my manner of doing business. When the mortgage was read, she said, whether in answer to a question, put by me, or not, I don't recollect, "This is done against my will." She said it was not of her seeking; she said she felt confused and at a loss which way to act, or something to that effect. When I spoke of compulsion or coercion, she appeared surprised that any such thing should be used. I think I put my name to the acknowledgment in the front room or parlor. My first recollection is of meeting Mrs. Blythe and taking her by the hand. This conversation of

[Louden v. Blythe.]

Mrs. Blythe that I have detailed, is all that I have any recollection of. There is nothing ridiculous in asking about compulsion. or coercion, because it is in the acknowledgment; but to ask her. if she had been abused or beaten by her husband, or feared she would be, if she did not, would be, I think, impertinent and improper.

He further testified that Samuel, Ezra Blythe, and two of his brothers, and, he thought, John McCleary, were in the room when he returned. "I have said to Mrs. Blythe and others, that I would never take another acknowledgment under similar circumstances, from a woman who seemed so much discomposed as Mrs. Blythe was—so painful to my feelings was the distress she manifested at the time. It was during the first part of the time that she was discomposed, and she did not seem to be entirely composed while I was in the room."

I don't recollect that the business was introduced to Mrs. Blythe until she had become more composed and began to converse. She was weeping when I first went in. I think she did not continue to weep all the time I was there.

Cross-examined:—I don't recollect any thing further in regard to her condition than I stated on my cross-examination.

Verdict was rendered for defendant.

Error was assigned, in admitting defendants' offer; and, second, in admitting the deposition taken on commission.

The case was argued by *McLean*, with whom was *Reed*, and *Evans*, for Louden, plaintiff in error.

It was contended that it was not competent to falsify by parol evidence the certificate as to the separate examination of the wife, except in cases of fraud and imposition: Jamison v. Jamison, 3 *Whar.* 457; Craig v. Shallcross, 10 *Ser. & R.* 468–69; Watson v. Bailey, 1 *Bin.* 470; 7 *Watts* 228, Withers v. Baird; 9 *Ser. & R.* 274, Jordan v. Jordan. That no evidence was given that the plaintiff was in the presence of the wife on the day of the acknowledgment, or knew of the circumstances attending it.

That the declarations of Mrs. Blythe were made when the plaintiff was not present, and were admitted.

That *all* the interrogatories should have been put and answered; 1 *Yeates* 404; 2 *W. C. C. Rep.* 184–87.

*Cooper*, with whom was *McCreary*, for defendant in error.—Parol evidence is admissible to contradict the certificate of the magistrate, in case of fraud or imposition: Jamison v. Jamison, 3 *Whar.* 457; also for the purpose of proving forgery or fraud: Barnet v. Barnet, 15 *Ser & R.* 72; or to prove collusion between the husband and the justice, in consequence of which it was falsely certified that the wife had appeared and made an acknowledgment

such as is required by law: TILGHMAN, C. J., in Barnet *v.* Barnet, *id.* 73; or to show that the acknowledgment was obtained by fraud or duress of the wife: Schrader *v.* Decker, 7 *Barr* 14.

There is nothing in the objection urged by the plaintiff, that he stood in the relation of an innocent person in the transaction. There was evidence in the offer going to charge him with actual notice; and without this, the objection could not avail him, as the defendant stands in equal equity. A purchaser for valuable consideration, without notice of fraud, shall not be assisted against the party on whom the fraud was committed: 2 *Fonblanque's Eq.* b. 2, ch. 6, sec. 2, note h; 1 *id.* b. 1, ch. 4, sec. 25, note. *In æquali jure melior est conditio possidentis.* *Plow.* 296.

As to the second error assigned, we say, that the interrogatories were *all* answered *substantially*, which is sufficient: Nelson et al. *v.* United States, 1 *P. C. C. Rep.* 235–37; Winthrop *v.* Union Insurance Co., 2 *W. C. C. Rep.* 7.

The exception goes only to the 8th interrogatory on the part of defendant, which is, in form, a request:—" State any thing else you know that would be evidence for the defendant, Sarah A. Blythe, in this suit." It might be thought strange that the *plaintiff* should object to the entire absence of any answer to this request, if the fact were so; but we find it distinctly answered in the reply of the witness to the fourth or general interrogatory on part of plaintiff, where she says—" I have stated all the facts within my knowledge in the preceding answers, that would be of service to either party." The *order* and *form* in which the interrogatories are answered are not material: Gilpin *v.* Consequa, 1 *P. C. C. Rep.* 85, 88.

The declarations given in evidence were made at and immediately before the time of the signing of the mortgage, and while it was in the course of preparation; it was all *one transaction*, and at *one time*, though extending through three or four hours; they were admissible, we say, as part of the *res gesta*.

They were admissible upon another ground. The defendant alleged that she had signed the mortgage under duress, which, as a species of fraud, opens the door for the admission of evidence of the whole context of circumstances in the transaction sought to be affected by it.

The case of Schrader *v.* Decker is in point; there, the refusal of the wife to sign the deed, *two hours* before it was executed, was part of the offer which this court say ought to have been admitted; and we submit that the fact of the importunity and resistance being continued for a longer time makes the case by so much stronger: Blair *v.* Coffman, 2 *Overt.* 176. Duress having been pleaded, evidence of conversation and acts before and after the supposed duress may show the state of mind in which the act was done.

It was not proved that the plaintiff was present when the mort-

[Louden *v.* Blythe.]

gage was executed, but the evidence' shows that he was at the house on the afternoon previous to its execution.

*McClean,* in reply.—No notice was given to the mortgagee of the compulsion.   Mrs. B. says that Louden was in the house when the mortgage was prepared, but it was not proved that he was in the room when Mrs. Blythe was asked to sign.   The point of Louden *not* having notice was not raised: it was mentioned by the court in admitting the evidence, but that was not to the jury.

The opinion of the court, filed August 2, was delivered by

CHAMBERS, J.—This case presents one instance out of the many that occur, by which a deed is extorted from a wife, conveying her real estate, under the forms of law and the sanction and certificate of a judicial officer, yet in reality against her free will and consent.   By the common law the wife's land could be aliened only with her assent, deliberately expressed, on a fair, full, and careful separate examination in a court of record.   The condition of real property under the provincial government, its common transfer, as an article of trade and barter, with but little form, and the want of judicial tribunals, induced a departure in this State from the requirements of the common law for the protection of a wife in the alienation of her lands, and substituted the form of acknowledgment which by legislative enactment was confirmed and provided for in February 1770.   Whatever the policy or exigency may have been that induced the relaxation of the law for the protection of the rights of *feme coverts* in their real estate, it is not creditable to our jurisprudence or to the intelligence of the times, that, with all the abuses of the exercise of the power by which a wife is divested of her real estate, and which so notoriously prevail, it should not have led to some legislative amendment of the law, providing for the protection of the wife, by a shield that had in it some substance.   So great is marital influence, and the defenceless condition of the wife, that it is a rare case that she has firmness and independence to resist, for any length of time, the importunity of a rapacious husband.   Whilst she has a husband for her protection against the world, she has, by the law of Pennsylvania, a most inefficient protection against the influence and control of her husband, who has her confidence and the keeping of her will.   It is said by Justice GIBSON, in Watson *v.* Mercer, 6 *Ser. & R.* 50, that "the policy of the law should be as far as possible to narrow rather than widen the field of this controlling influence."

It is, we think, for our judicial tribunals to administer to the wife the protection professed to be given by the forms of the law, as far as justice and public security will allow.

In the present case, the plaintiff, S. Louden, claimed the lots and mansion for which the ejectment was brought by him, under a

mortgage executed by the defendant, Mrs. Blythe, jointly with her late husband, Ezra Blythe, of the real property of the wife. The acknowledgment of Mrs. Blythe was in the *form* required by the act of Assembly, and certified by Nathaniel Grayson, a justice of the peace of Adams county.

On the part of Mrs. Blythe, evidence was offered in the court below to impeach the acknowledgment as certified, for alleged imposition, falsehood, and fraud, as contained in the offer of defendant. This was objected to by the plaintiff, but the objection was overruled, the evidence admitted, and exception taken, and is assigned for error in this court by the plaintiff.

The justice who takes and certifies the acknowledgment of the wife to a deed is acting judicially. He is the commissioner and organ of the law, intrusted with the duty of seeing that it is her act and deed, and that she did voluntarily and of her own free will and accord, without any coercion or compulsion of her husband, sign, &c. His duty is an important one to the wife and her representatives; and it is a responsible one to the public, who are interested that the law be faithfully administered. We cannot cast into oblivion our knowledge that this duty is often, by justices of the peace, and sometimes by other judicial officers, as has been said, "hurried over almost in the presence of the husband." And when the examination is out of the presence of the husband, the justice seems to think, he has only to read over, in a hurried manner, the prepared form of acknowledgment which he has in his hand, and if open resistance is not made by the dependent wife, the acknowledgment is certified in due form, with all its particulars. There is no free and searching inquiry by the magistrate as to the free will and consent with which she is parting with her estate to satisfy the demands of an improvident and importunate husband. The law intends that he should do what is enjoined, and he certifies, under his hand and seal, as a judicial officer, that all was done in conformity to law.

Can it be that such acknowledgments are of so high and sacred character as to import absolute verity, and cannot be assailed by parol evidence? Had the acknowledgment been in a court of record by fine, it would have been open to impeachment for fraud: 1 *Mad. Ch.* 266; Schrader *v.* Decker, 9 *Barr* 14. But, say the court in the last case, "that we would deprive married women of all substantial protection, did we give to the separate examination of a judge or justice of the peace the conclusive effect of an examination by commissioners to levy a fine, which is more private, careful, and searching." "The necessities of justice therefore demand that the transaction be open to objection, not only for fraud, but concealed duress."

In the case of Jamison *v.* Jamison, 3 *Whar.* 457, it was held that parol evidence of what passed at the time of the acknowledgment

[Louden *v.* Blythe.]

is not admissible for the purpose of contradicting the certificate, except in cases of fraud or imposition. Parol evidence may be received for the purpose of proving forgery or fraud, or collusion between the husband and the justice, in consequence of which it was falsely certified: Barnet *v.* Barnet, 15 *Ser. & R.* 72–3.

A regard to the policy of the law, for the security of titles and the protection of the rights of property which are passed by conveyances and assurances of which these acknowledgments and certificates are a common part, will restrain this court from allowing such acknowledgments to be impeached by parol evidence, contradicting the facts certified, in the absence of fraud and imposition; and where there are fraud and imposition alleged, the knowledge of it ought to be brought home to the grantee, or of such circumstances within his knowledge of the want of free will and consent on the part of the wife, as should lead him to inform himself of the reality of a free execution and acknowledgment by the wife whose property was to be divested. Where the grantee has knowledge of facts to put him on that inquiry, if silent and inactive on the subject, it is at his peril, and he must abide the consequences.

In this case it was proposed to be proved, and it was so proved, that when Mrs. Blythe was in the sitting-room with Ezra Blythe, her husband, and S. Louden, the plaintiff, she was asked to execute this mortgage, which she refused to do, and retired to her chamber, where she lay in bed weeping. She was followed there and importuned by her husband to sign the mortgage, which she still refused to do, stating to him that he was aware of her unwillingness to divest herself of this property, which she desired to retain as a home for herself and him, if he survived her. He continued to press her, and she refused. Having persevered for a long time without success, her husband turned away, apparently agitated, declaring that he would not remain on the property if she refused to execute the mortgage; and he went out of the chamber. She was then pressed by the relative of her husband, with repeated solicitation,—when she got from her bed and wrote her name to the mortgage, and immediately gave the pen a dash, as if to strike out her name. The justice, who was in the other room with S. Louden throughout the afternoon, is brought into the chamber of the weeping wife at candle-light, and asks Mrs. Blythe if she signed the mortgage with her own consent, to which she answered, " It is of no use to deceive you: I had no will in the business; my will was not consulted." The justice again asked her whether he understood her to say that she did not sign the mortgage with her own free will and consent, to which she replied, " I did say so." He repeated the question several times, and to which Mrs. Blythe gave the same answer. Her health was delicate, and she was in tears most of the afternoon. She declared that she was willing that all her personal property should go to pay the debts of the firm of

[*Louden v. Blythe.*]

which her husband was a partner, but that she was unwilling to sign a mortgage of the house and lot, as she felt certain that her husband would be disappointed in lifting it. N. Grayson, Esq., justice of the peace, who certified the acknowledgment, being called on the part of S. Louden, substantially confirmed most of the material facts testified to by witnesses of unimpeached veracity.

The justice testified that when he entered the room, Mrs. Blythe appeared to be distressed, and was weeping, and that when the mortgage was read, she said, "This is done against my will," and that the witness had since said to Mrs. Blythe and others that he never would take another acknowledgment under similar circumstances, from a woman so much discomposed as Mrs. Blythe was; so painful to his feelings was the distress she manifested at the time.

N. Grayson, Esq., who testified to such want of free will and consent on the part of Mrs. Blythe, was the justice of the peace who gave the certificate of her acknowledgment on the mortgage in all the form required by the law, and which, it is contended, is of such solemnity, and of so high a character in legal estimation, that it was not to be assailed by the evidence offered and received. It appears that the justice, on subsequent reflection, felt not a little compunction of conscience, in allowing himself to have been instrumental, as the organ of the law, to take and certify to such an acknowledgment by this distressed, opposing, and defenceless wife. For we have him declaring "that he never would take another acknowledgment under similar circumstances." Well might he regret that on that occasion, as a public magistrate, he did not take an independent stand on the side of the law and of the oppressed wife.

Was not the certificate of the justice to the acknowledgment of Mrs. Blythe on the mortgage exhibited, in view of the facts disclosed, if believed, an imposition and fraud on her?

Can it be that the law interposes any rule or obstacle to prevent the admission of the evidence offered and received by the court below? Here is a wife decidedly refusing to execute the mortgage in the presence of the justice and S. Louden the mortgagee, and flies from the sitting-room to her chamber and bed, to seek solace in tears, having no friend to protect her. In delicate health she lies on her bed and continues to weep throughout the afternoon, where, in the midst of her tears, she is annoyed by a husband's influence, and with the threat, if she did not sign, he would not remain on the property—thus threatening to desert her. It is said, A broken spirit who can bear? Here were the spirit and feelings of a wife crushed by the unkindness of her husband. There were in the circumstances of this case facts proper for the consideration of the jury, as evidence of imposition, undue influence, and fraud.

From the facts in evidence, we cannot suppose S. Louden,

[Louden *v.* Blythe.]

the plaintiff, ignorant of the circumvention and cruelty by which this wife was to be deprived of her remaining real estate, which she clung to as the home and shelter of her declining years.   He was in the sitting-room, about midday, when she refused to execute the mortgage.   Why was an afternoon required for the work, and a succession of visits by the husband and others to her weeping chamber, if all was right and voluntary.   He saw and heard enough, if believed by the jury, to put him on the inquiry, and make him ascertain for himself, whether she was executing this mortgage "of her own free will and accord."

We are willing to believe that Mr. Ezra Blythe may, like many embarrassed men, have underrated his indebtedness, and did in sincerity suppose that he would be able to extricate himself and lift the mortgage.   His wife, with more sagacity, had no such expectations, in which she was right.

Not to have admitted the evidence offered would have been to place the certificate of a justice of the peace in such a case beyond inquiry, and above the most solemn records ; left wives as to their real estate in the power of their husbands and any justice of the peace they might select, and been a reflection on the administration of justice.

It is the opinion of this court that there was no error by the court below in admitting the evidence excepted to and assigned for error.

The errors assigned to the deposition taken on commission are not sustained.   The charge of the court to the jury, if delivered, has not been brought up with the record.

Judgment of Court of Common Pleas affirmed.

BELL, J., dissented, for reasons assigned in his opinion filed.